# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE,<br><br>*Plaintiff,*<br><br>v.<br><br>FOOD AND DRUG ADMINISTRATION,<br><br>*Defendant*. | Civ. A. No. 23-0220 (RDM) |

## JOINT STATUS REPORT

Pursuant to the Court's Order during the Status Conference held on October 4, 2024, Defendant United States Food and Drug Administration ("FDA") and Plaintiff Children's Health Defense ("CHD," and together with FDA, the "Parties") respectfully submit this joint status report to respond to the Court's specific questions.

## FDA'S POSITION[1]

### I.  Length of Time to Process Previously Identified Records.

1. The Court asked how long it would take FDA to process 150 already identified records. FDA previously represented that CBER FOIA would need to "free up approximately one month of staff time" to process these records. Def.'s Status Report ¶ 27 (Aug. 9, 2024), ECF No. 31; *see Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) ("Agency affidavits—so long as they are 'relatively detailed and non-conclusory'—are 'accorded a presumption of good faith[.]'"). This estimate was intended to include time to vet and resolve disclosure issues, as well as time for

---

[1]  During the Status Conference, the Court directed to FDA two specific questions and permitted CHD to elaborate on its argument that commencing a lawsuit entitles it to preferential treatment. Accordingly, FDA limits its position statement to those topics and does not address the issue of urgency, which the parties already have argued to the Court.

CBER FOIA management to redirect resources and have staff review and redact the records, as necessary.

2.      Upon further consideration of the disclosure issues, "one month" was an underestimate of the time FDA would need for processing the records. For the reasons described in paragraph 3, FDA now estimates that it would need a minimum of several additional months to resolve the pending releasability questions.

3.      These records are the product of complex calculations and concern potentially sensitive data. Whether and to what extent they are releasable is a matter requiring the input of and coordination among multiple parties, both internal and external to FDA. At a minimum, such consultations are expected to include counsel at FDA, the Department of Health and Human Services, and the Department of Justice. Once a determination regarding the applicability of exemptions has been made, the CBER FOIA staff time required to process the records is not expected to be great, but given the sensitivity of the information at issue and the evaluative process involved at multiple levels in reaching the necessary determinations, the process will be somewhat extended. The time needed to process this information is not simply a question of the hours involved in actually, e.g., applying redactions if necessary, and the like.

Moreover, FDA reiterates that any order requiring CBER FOIA staff to process a request that is not at the front of the queue would cause further delays for other FOIA requesters, including those who have been waiting longer than Plaintiff for their requests to be processed. *See Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 614 (D.C. Cir. 1976) ("The real parties at interest here may not be the [agency] at all, but the [hundreds of] other persons or organizations who made requests prior to plaintiff []. We have no doubt that the Government officials would comply promptly and faithfully with any order this court issued giving preferential,

expedited treatment to the request of [Plaintiff]. They would, of course, given their finite human and financial resources, do so by taking personnel away from other prior requests which the [agency] is now engaged in processing.").

4. As described by Suzann Burk, Director of the Division of Disclosure and Oversight Management at CBER, the small team responsible for processing non-*PHMPT II* requests is moving as quickly as it can to review and process an enormous backlog of requests. *See* Declaration of Suzann Burk ("Burk Decl.") ¶ 32, ECF No. 31-1. A reshuffling of their priorities would take time away from their core work, resulting in inefficiencies and likely resulting in further delays for all requesters.

## II. Current Position of Overlapping Requests in Complex Track Queue.

5. As of October 17, FOIA Request 2022-4855 is behind 290 earlier-submitted FOIA requests that are waiting to be processed in the Complex Track. That request, which will be processed slightly ahead of Plaintiff's FOIA request, seeks records that are duplicative of the portion of Plaintiff's FOIA request that seeks records of Empirical Bayesian data mining conducted by FDA.

6. Also as of October 17, Plaintiff's FOIA request (Request No. 2022-5587) is behind 299 earlier-submitted FOIA requests in the Complex Track.

## III. Whether PHMPT Has Additional Requests Pending.

7. The Court asked whether there are additional FOIA requests submitted by PHMPT in the Texas litigation. To the best of FDA's knowledge, there are no additional FOIA requests submitted by PHMPT; PHMPT has only submitted the two requests at issue in *PHMPT I* and *PHMPT II* (Requests Nos. 2021-5683 and 2022-1614).

8. During the October 4, 2024, status conference, the Court expressed that it is contemplating issuing a preemptive order requiring FDA to clear its queue before complying with any other future order in *PHMPT*. No such preemptive order is necessary or warranted. To the extent that such preemptive order is designed to deter another district court from compelling FDA to produce documents in a later-filed FOIA request, such order would not be binding on that district court. *See Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) ("A federal district court lacks jurisdiction to review decisions of other federal courts."); *Mullis v. U.S. Bankr. Ct. for the Dist. of Nev.*, 828 F.2d 1385, 1392-93 (9th Cir. 1987) ("To allow a district court to grant injunctive relief against a bankruptcy court or the district court in the underlying bankruptcy case would be to permit, in effect, a 'horizontal appeal' from one district court to another or even a 'reverse review' of a ruling of the court of appeals by a district court. Such collateral attacks on the judgments, orders, decrees or decisions of federal courts are improper."). Such an order would, however, be binding on the FDA, as would any competing order that might be issued elsewhere. Such judicial management of the Executive is unwarranted in these circumstances. *See Open America*, 547 F.2d at 615-16 ("Congress wished to reserve the role of the courts for two occasions, (1) when the agency was not showing due diligence in processing plaintiff's individual request or was lax overall in meeting its obligations under the Act with all available resources, and (2) when plaintiff can show a genuine need and reason for urgency in gaining access to Government records ahead of prior applicants for information."); *see also Democracy Forward Found. v. Dep't of Just.*, 354 F. Supp. 3d 55, 62 (D.D.C. 2018) ("Yet, as a general matter, it is not the role of the judiciary to question how executive agencies request and allocate resources, absent some compelling evidence of purposeful conduct.").

9. Plaintiff's bringing of this litigation does not entitle it to jump ahead of other requesters in the queue. Court dockets in this district overflow with FOIA matters. As Judge McFadden has explained, "[m]any of those [FOIA] cases seek reams of records, requiring massive efforts from defendant agencies." *Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*, 537 F. Supp. 3d 78, 79 (D.D.C. 2021). This is notably true for FOIA requests directed at the Department and its constituent agencies, which during Fiscal Year 2023 received 46,350 FOIA requests, a twenty-one percent increase from the previous fiscal year. Dep't of Health & Human Services, *2024 Chief FOIA Officer Report HHS* (Mar. 7, 2024), available at https://www.hhs.gov/foia/statutes-and-resources/officers-reports/2024-introduction/index.html (last visited Oct. 17, 2024). And that is just one federal department. If CHD's breathtaking theory holds, every requester in every one of those 46,350 FOIA requests directed at the Department—not to mention countless FOIA requests directed to other federal departments and agencies—may circumvent the administrative process by sprinting to court at will, with all the burdens that such litigation imposes both on the Court and on parties. Moreover, in many cases rendering agencies subject to attorneys' fees awards if "sudden[ly] accelerat[ed]" treatment is accorded to a request in litigation or if a court orders such preferential treatment for a request, the FOIA attorneys' fees statutory provision and caselaw interpreting it rightly dissuade agencies from accelerating the processing of FOIA requests just because a FOIA request is in litigation. *See EPIC v. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 41 (D.D.C. 2016); 5 U.S.C. § 552(a)(4)(E)(ii)(I) (a party is eligible for attorney's fees under FOIA if, among other things, it obtained relief through "a judicial order"). The Court should decline CHD's invitation to adopt such a disruptive, inequitable, and "potentially quite expensive" theory. *See Harvey v. Lynch*, 178 F. Supp. 3d 5, 8 (D.D.C. 2016) (Moss, J.) ("a strict-liability rule for

agencies that miss the 20-day FOIA deadline [would be] both unnecessarily harsh and potentially quite expensive") (citing *Cox v. Dep't of Just.*, 601 F.2d 1, 6 (D.C. Cir. 1979)).

10. CHD's approach would subvert the procedures for "equal and fair" access to government records that Congress created. *Open Am.*, 547 F.2d at 615. Plaintiffs all too often do not avail themselves of the multiple "alternative[s] to litigation" that Congress created specifically to "help reduce the number of requests that are eventually resolved through costly and time-consuming litigation." 153 Cong. Rec. H16788, 16,790 (Dec. 18, 2007). Congress established at each agency a "FOIA Public Liaison, who shall assist in the resolution of any disputes between the requester and the agency." 5 U.S.C. § 552(a)(6)(B)(ii). It also created a government-wide Office of Government Information Services to "offer mediation services to resolve disputes . . . as a nonexclusive alternative to litigation." 5 U.S.C. § 552(h). The inclusion of two different voluntary alternatives to litigation signals Congress's preference for encouraging FOIA requesters and agencies, both acting in good faith, to minimize the costs and burdens of FOIA. Endorsing CHD's theory creates perverse incentives that reward those plaintiffs best able to retain lawyers. Once in court, these plaintiffs can—and often do—seek special or preferential treatment, and sometimes obtain injunctions mandating extraordinary processing deadlines—precisely the issues presented by CHD in this case. Yet the D.C. Circuit has warned against creating incentives that prejudice plaintiffs who "would not have the financial resources to hire a lawyer and go to court." *Open Am.*, 547 F.2d at 615. Such a system is contrary to Congress's intent "to guarantee access to Government agency documents on an equal and fair basis." *Id.*

11. Put simply, Defendant is doing the best it can with its available resources to equitably process the pending requests while complying with courts' orders. Plaintiff's recourse

to litigation should not be rewarded with an order that effectively would permit Plaintiff to jump ahead of countless others who likewise are awaiting a response.

## PLAINTIFF'S POSITION

12. Plaintiff submits this position statement to address the Court's question regarding processing priority, raised during the October 4, 2024 hearing, and does not here respond to any of the information provided in the Defendant's statement.

13. When, as here, there is an urgent need for disclosure of records, the Freedom of Information Act (FOIA) and associated caselaw establish that after a plaintiff files a FOIA lawsuit, the court has full authority to order a defendant agency to begin producing records. This authority is not limited even if an agency has placed the plaintiff's request in a severely backlogged and understaffed processing queue. *See Buc v. Food & Drug Admin.*, 762 F. Supp. 2d 62, 65-66 (D.D.C. 2011) (denying *Open America* stay, and ordering FDA to immediately begin processing plaintiff's requests and producing records on a rolling basis, where requests were behind hundreds of others in the complex track). To the contrary, as discussed below, under *Open America*, CHD's request is entitled to preference.

14. As the D.C. circuit has recognized, "stale information is of little value." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). Not surprisingly, then, the FOIA provides a strict timeline for processing requests, 5 U.S.C. § 552(a)(6)(A) and (B), and a condensed timeframe for litigation, requiring a defendant agency to respond within thirty days of service of a complaint. *See* 5 U.S.C. § 552(a)(4)(B). The FOIA authorizes a court to order production when a lawsuit is filed, *see* 5 U.S.C. § 552(a)(4)(B), giving the court "broad discretion to determine a reasonable processing rate for a FOIA request." *Colbert v. Federal Bureau of Investigation*, 2018 U.S. Dist. LEXIS 233651 at *3 (D.D.C. Sept. 3, 2018)).

15. As set forth in every one of CHD's pleadings, the FDA has failed to prove that it has exercised due diligence in processing plaintiff's FOIA request (or any request in the complex queue), and thus is not entitled to a continued *Open America* stay. *See* ECF 32, Response to Defendant's Status Report; ECF 28, Joint Status Report; ECF 19, Opposition to Stay; ECF 22, Sur-reply. More importantly, however, regardless of whether the FDA has worked diligently to process CHD's request, *Open America* holds that a stay is not proper here, because there is an urgent need for the records. *See Open America v. Watergate Special Prosecution Force,* 547 F.2d 605, 614 (D.C. Cir. 1976), and discussions in ECF 32 and ECF 28.

16. When urgency exists, as it does here, *Open America* makes clear that a plaintiff's request should receive *preference* over requests that may be ahead of it in a processing queue:

> We believe that Congress intended for a district court to require an agency to give priority to a request for information if some exceptional need or urgency attached to the request justified putting it ahead of all other requests received by the same agency prior thereto…

*Open America* 547 F.2d at 615-16.

17. Even the FDA admits to this very point, and its recent JSR incorporates the quote from *Open America* acknowledging that a litigant is entitled to preference in cases of urgency. *See* ECF 31, Defendant's Status Report, ¶ 8; *accord Aguilera v. FBI*, 941 F. Supp. 144, 149 (D.D.C. 1996) ("*Open America* also recognized that where a requester shows exceptional need or urgency, that particular requester may be given priority over other requesters" and "[t]hus, the agency's satisfaction of the *Open America* exceptional circumstances-due diligence test is not a complete shield").

18. With respect to urgency, in CHD's two-year old request to the FDA for expedited processing, and in all of its filings in this Court, CHD has articulated and emphasized the public's urgent need for records of the FDA's post-authorization COVID-19 vaccine safety

monitoring, to understand what safety signals the referenced monitoring has revealed, how the FDA has investigated those signals, and how the agency continues to reach its conclusion that the COVID-19 vaccines are safe.

19. As CHD has noted repeatedly, these records are urgently needed by—among others— private individuals who must decide whether to take Covid-19 boosters, whether to vaccinate their children, and how to recognize vaccine-related adverse events; scientists, medical professionals, and policymakers who must decide how to advise and treat patients and constituents; and individuals who are trying to deal with adverse events they suffered after vaccination. This urgency is heightened in light of ongoing recognition of COVID-19 vaccine side effects.

20. Courts in other FOIA lawsuits have recognized that post-authorization drug safety-monitoring data are of critical importance, and the public's need for the records urgent. For example, in *Bloomberg v. FDA*, 500 F.Supp.2d 371 (S.D.N.Y 2007), the plaintiff sought information regarding the FDA's analysis of adverse events from an anti-epileptic drug, and the court found that disclosures regarding the fact that the FDA was *investigating* a potential association between the drug and the adverse events were not equivalent to the FDA's *actual* data and analysis from that investigation. *Id*. at 378.  Rather, an exigent need existed regarding the FDA's *internal* findings from the investigation. *Id*. The court wrote:

> [T]here is a significant recognized interest in knowing whether the Government-initiated investigation regarding the anti-epileptic drugs has yielded any important information that would inform the public debate and advance understanding of medical issues still unresolved… .As [the plaintiff] puts forth, "Part and parcel of the public's right to know is understanding what the FDA knew about these potential side effects, when and how the FDA uncovered these potential side effects, and the forthrightness of pharmaceutical companies to the FDA about these potential side effects."

*Id*. at fn. 4 (cleaned up).

21. The FDA has acknowledged that *none* of the post-authorization safety-monitoring records sought by CHD have been made available to the public, despite the FDA's continuing public statements that the vaccines are safe, based on the very monitoring it refuses to disclose. *See* ECF 32, Response to Defendant's Status Report; ECF 28, Joint Status Report. Since CHD's FOIA requests are more than two years old, the public should not have to wait any longer to obtain this important information, and certainly should not have to wait 24-36 additional months before the FDA begins to process the 150 documents already identified as responsive. Indeed, if the Court grants the FDA's request to stay this matter for years on end, CHD's (and the public's) right to obtain these documents in time to affect policy changes, assist health outcomes, and prevent more injuries will effectively be foreclosed.

22. Accordingly, CHD respectfully requests that the Court reject the Defendant's request for indefinite delay in this case, and issue the production order as requested and set forth by CHD in its June and August pleadings. *See* ECF 28 and ECF 32.

Respectfully Submitted,

October 18, 2024

/s/Risa Evans
Risa Evans, Esq.
New Hampshire Bar #9990
D.C. District Court I.D. No. NH0003
Children's Health Defense
852 Franklin Ave, Suite 511
Franklin Lakes, NJ 07417
Tel: (603)731-1733
Email: risa.evans@childrenshealthdefense.org

/s/Ray L. Flores II
Ray L. Flores II, Attorney at Law
11622 El Camino Real
Suite 100

San Diego, CA 92130
California State Bar Number: 233643
D.C. District Court I.D. No.: CA00173
Phone: (858) 367-0397
Email: rayfloreslaw@gmail.com

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: /s/ *Dimitar P. Georgiev*
DIMITAR P. GEORGIEV, D.C. Bar #1735756
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 815-8654

*Attorneys for the United States of America*

11